I want to start with the sentencing argument and I'm going to try to reserve a minute of rebuttal time, I'll keep an eye on the clock. Mr. Jacobs' guidelines were not correctly calculated. The district court misapplied the sensitive position adjustment and that is found in 2C1.1b3. This error resulted in an additional 4 levels and of course Mr. Jacobs was sentenced to a prison sentence of 5 years, a lengthy sentence for a 72 year old man at the end of a distinguished career. The government had the burden here of producing evidence to support the enhancement by clearing convincing evidence. They rely heavily on this case, I'm not sure how to pronounce the name, Rennes-Slakis I believe, which I would urge the court to look at carefully did not involve a clear and convincing standard of proof. All the parties on the court agreed that that was the standard. When we look closely at the record we see that the facts did not rise to that level. The question I would ask is did Mr. Jacobs' direction to Mr. Ballance to issue the travel stamp without more meet that burden of proof because that is really what it amounted to. The court when it made its findings which are at the sentencing transcript on pages 52 and 53 essentially said that by virtue of his position being Mr. Jacobs' position as a supervising ISO that he had more authority than an ISO. And that like Rennes-Slakis who was an ISO he should get this sensitive position adjustment. But the only actual conduct the court cited to was the authority that he said was demonstrated by this instruction to Ballance. There's sort of an intuition though if the inferior position is a sensitive position then the person supervising that person who is even more in the trust of the agency would likewise have a sensitive position. That seems to be what the opposing counsel is drawing from Rennes-Slakis and certainly has intuitive appeal. What's wrong with that reasoning? It has intuitive appeal but it's such a fact based inquiry and I think if you keep the premise in mind that it's actual authority not apparent authority. Didn't he have actual authority as a supervisor over all of the ISOs, the individual officers? The position that he was in essentially was as an administrative type clerical person. He didn't review applications, he didn't make decisions whether people would get residency or citizenship. Why was he called a supervisor then? Because usually you call someone a supervisor who is supervising the line employees who are doing work under your direction. I think that one of the witnesses testified that it was essentially his job to make sure that people followed the law. I believe there was also testimony about he had a team of people under him and essentially they had burdens of how cases moved forward and making sure cases moved forward. Unlike Rennes-Slakis, in that case in which the ISO, who was not the defendant but the person who was pretending to be a corrupt official, but that ISO I think reviewed thousands of applications a year and had no review of his work. Counsel, if you don't mind, I'd like to change topics because your time is running low. And that is I want to be sure that I understand on the other issue what you're challenging and what you're not. I take it from your comments and where you started that I correctly understand that you are not appealing your client's conviction related to obtaining issuance of the travel stamp. Right. So with respect to the others where the alleged material act is querying the database, I would appreciate having your comments on that issue as to why those acts are not material. Sure. Essentially, his acts of querying the database were the very kind of clerical act that anybody could have done, which has nothing to do with influencing agency decisions. In other words, if I were to look up on PACER, what's the status of a criminal case? Has the person been sentenced yet? Has their motion been heard yet? I would be able to tell you the status of the case that I can learn from the database. So if you were to, say, try to bribe the court clerk to look at PACER on your behalf, there would be no material. It might be something else, but it's not the deprivation of honest services because you could do the same thing. Exactly. I think what was going on here is it was really a scam on the immigrants. So was the database not the A files? Was that not confidential? It wasn't the A files. The A files are housed somewhere else, stored somewhere else, and no A file was ever moved, no A file was ever reviewed, no A file was ever even asked for. Promises were made by Mr. Jacob's son, Patrick, who was the drug addict. Many, many promises, which not only was that conduct not ever done, but they were just false promises. What Mr. Jacob's did is essentially look up on the computer, much like I would with my PACER ID number, the status of the case. Not everybody could look at that computer. That's true. And clearly there were workplace violations. Clearly there were violations of work rules and policies. So was the database public or not public? I guess I'm not understanding. Well, it was information that probably largely was known to the immigrants because it would have been a reflection of the status of an immigrant's file. But was the database itself public or not public? It wasn't public in the sense that no regular person could sign on. You had to have an ID number. So did he show them anything from this database? In other words, did he give anyone access to the database themselves who would not otherwise have had access, or did he just say, well, I've looked it up and your case will be heard next Thursday? There was an inference from one of the video recorded meetings that Patrick Jacobs, the drug addict's son, had a piece of paper that looked like it could have been from an official database. He didn't give the paper to anybody. No one knows where that paper is. Nobody even knows if it was a faked piece of paper. But there's an inference in that video that Patrick was claiming to have had something from his father. In other words, it was a way of making the immigrant believe that he was legitimate, that he really could get access. But there's no such piece of evidence. Nothing was seized or booked or anything that could tell us exactly what it was. It seems to me that all that was proved was that people were essentially bribed or given money to return information that the person already had a legal right to have. A legal right or a right they could have gotten, information they could have gotten some other way. Like inevitable discovery, if it were. They would have been able to get it from a lawyer. I guess I'm not understanding. The database is the compilation of information that the agency had. It's not a compilation in the sense that it's not all of it, but it's some information. And did the alien have a right? Could the alien have gone into the office and said, like a FOIA request, I want to see the contents of this file? Do they have a legal right to that information? Well, I don't know. Because that actually wasn't asked at the trial. An alien or an alien's lawyer, who is their representative, could certainly talk to an ISO or a supervising ISO or anybody higher. And perhaps even people lower, in Room 1000, which was sort of a general information room, what the status of their case was. There's nothing in there that was... There wasn't any indication it was secret. On the other hand, it is a database that's limited to people who work for the agency. I suppose it's like... But it's very, very different than someone actually affecting an agency decision, like reviewing an application, processing a request. There was no change in the database. Nothing was altered. There was testimony through one of the witnesses that lawyers have access to a very similar database to give updates on status. The aliens should have known all the information because there was testimony that the agency would send letters giving notice of things. But it wasn't like the alien could walk in and access a terminal and get the information themselves. Thank you, Counselor. We asked a lot of questions, so we'll give you a minute for rebuttal. Thank you very much. Thank you. Good morning, Your Honors. Rosella Oliver on behalf of the United States. With respect to the first issue raised by the defendant, the defendant was a supervisory immigration officer at CIS, and in that position, he accepted bribes in exchange for providing immigration assistance. Let me ask you about that, what the assistance was. The information that was obtained by the defendant and given over to the aliens in question, was this information that they were entitled to have legally, the basic information that he gave them? No, Your Honor. The information in the DHS database is, number one, was confidential. Number two, contained information, partly that the immigration that the alien had supplied, either via any type of immigration application, but it also contained confidential information about various actions that CIS had taken with respect to the alien. Let me just be sure I understand that, because there's a difference between accessing a database that contains confidential information as well as public information, and then giving it over to the alien. So if, for example, let's say someone asks a court employee, I want to know the status of my case as it had been set for appeal. Well, in looking at a database, that employee may see a whole lot of confidential stuff and then find the information about when is this case set, and pass along only the appropriate public information. So that's why I'm interested in what it is exactly that was given over by the defendant that the aliens were not entitled to know. We can take, for example, the alien referred to as S.K. or Cyrus Cordoni. The testimony presented at trial showed that the defendant, the day before his son met with Cyrus Cordoni, he went and accessed the DHS databases and printed information about Mr. Cordoni. Included in that information was that the defendant was in deportation proceedings and that there was an active warrant out for him. And why wouldn't that be something that the person is entitled to know, that they're in deportation proceedings and there's a warrant for them? They're not entitled to know that? If Mr. Cordoni had walked up or his designated representative had walked up to C.I.S. and done that, there would be nothing illegal. That's not the facts of this case. Well, I know that, but I want to drill down on this because it seems to me very odd to say that obtaining information for someone that they are entitled to possess, that they are entitled to know the answer to their question, it may be something, but I don't see how it's the deprivation of honest services to give someone information that they're entitled to have. Now, if they obtained it in a way that their employer says is terrible, then maybe they should be fired or something else. But I don't understand, if the government isn't induced to act in any way, how that's deprivation of honest services. Well, Your Honor, I don't think the government was required to prove that the queries were materially deceptive. The case law under Woods is that it is the scheme to defraud that must be materially deceptive, and the wires must only be in furtherance of that. But I still don't see where the deception lies if someone obtains information for someone that they're entitled to know. And maybe they do it in a way that is not authorized, but I guess I don't see that. They're defrauding the aliens, for sure, but I don't understand how they're defrauding the government. I mean, if you take a case like Milovanovich, the government is induced to give driver's licenses to people who may not be qualified. But here, the scheme was not that he accessed the database and shared that information. The scheme was that he accessed it, found out what the immigrant's situation was, and gave them advice about how to beat the system. You have an active warrant. You need to take action to avoid being deported. If you pay me money, I will help you do that. That is a deprivation to the citizens of the United States and to CIS of a supervisor at Immigration's honest services. So was he doing that? Because it appeared that he was providing information about the status, but I didn't see them providing advice about how to beat the system. Was there evidence that he was doing that? Yes, Your Honor. In the context of Yesenia Lopez, the defendant, there was testimony about how Ms. Lopez drafted an I-751 waiver, good faith marriage waiver. Defendant's middleman, Mr. Reyna, took that to the defendant. He marked it up and said, no, you have to do it a different way, gave it back to Ms. Lopez through his middleman, Mr. Reyna, and then Ms. Lopez then submitted that to CIS. When there was no action taken on that, the defendant then allowed Ms. Lopez to come into CIS offices and gave her and her son travel stamps, stamps that were proof of legal residency that she was not entitled to. That's the one he's not challenging on appeal, though. Can we consider the travel stamp issue in the context of the scheme as a whole, even though there's not a specific challenge, or do we just put that to one side? With respect to the honest services wire fraud counts in the indictment, they incorporated the entire scheme, which included the Lopez fraud, and so the government submits that it is appropriate to consider that in evaluating the materiality of the defendant's bribery scheme. Is your theory that because he was spending his time, that he was supposed to be working for the government and he was working for the aliens, is that the theft of honest services? Yes, Your Honor. Is that your theory? Because that's not really the theory that you tried. I mean, you're explaining it that way now, and it makes some sense, but I don't see that that was your argument previously. The argument and the evidence presented in the trial to support that was that the defendant concealed from his employers that he was accepting bribes from aliens who did have, some of whom did have active applications pending with CIS. Isn't there a separate criminal statute on bribes that is different than this section? Yes, and the defendant was charged and convicted with respect to that. Right, so it's not like if you don't get this conviction, it's perfectly legal conduct that he can get away with. I guess I just think, well, I'm just having trouble fitting it into the context, as you can tell from my questions. Getting back to the Lopez, his markup of her document, I thought he did things like maybe a lawyer would do. He said, put your A number on it, and the sorts of advice he was giving didn't seem to be how to game the system, but more how to make your application fit our requirements better. The government disagrees, Your Honor. Part of the advice that the defendant gave Ms. Lopez was that she needed to provide a false address, an address that would have placed her application within District 23, which was the district where the defendant was a supervisor, and reasonable inference from that is so that the defendant would have the ability to exercise control over Ms. Lopez's file. And, again, that's the one he's not challenging, right? With respect to that, Mr. Jacobs is not attacking that conviction, but the government submits that that was properly charged and brought within the honest services wire fraud in Count 7 through 10, Your Honor. With respect to issue number 2, the defendant, what the district court correctly found, that as a supervisor of immigration officers, that he did hold a sensitive position. The definition provided in 2C1.1b3 requires that the position be one that exercises substantial influence over the decision-making process, and as Serena Slaza correctly decided, an immigration officer does exercise such, have such a sensitive position, and as a supervisor of such immigration officers, the defendant's position was even more sensitive. If there are no further questions from the court, the government would ask that the court affirm the sentences and the conviction. Thank you, counsel. You may have one minute for rebuttal. Okay, with respect to the beating of the system, it's not at all what the facts were. The facts were that he gave accurate information that was true. Did he tell her to put on a false address, or did he recommend a false address? She lived, it wasn't a false address. It was a real address where she lived. It's completely a red herring for the government to say that was so her application would come to him. He never asked for her file to come to him. He never reviewed any application of hers or file. With respect to the good faith declaration, the so-called advice he gave was accurate advice that's available in any generic manual. It's not secret advice. It's not internal advice. It's not manipulative or any exercise of any discretion. On the point of the sentencing, this case is so unlike the person involved in Redis Lacus because that person had unreviewed power over very important decisions. Here there were no decisions made by Mr. Jacobs with the exception of the travel stamp, which Mr. Bowens testified to was one of their most important duties, and all of the conduct that Mr. Jacobs was involved in was essentially he would review people below him, so it wasn't unreviewable at all. You've exceeded your time, and we do understand your argument. Thank you very much. I always have more to say. Thank you very much. We all do. That's why we're lawyers and judges, I think. The case just argued is submitted, and we appreciate very much the arguments of both counsel.
judges: Bright, Graber, Ikuta